IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MEMORIAL HERMANN HEALTH SYSTEM, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-17-2364 |
| PENNWELL CORPORATION MEDICAL AND VISION PLAN and PENNWELL CORP., | § § § § | |
| Defendants. | § § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Memorial Hermann Health System, brings this action as assignee of a patient identified as P.C., against defendants, Pennwell Corporation Medical and Vision Plan, an employee benefit plan ("Plan"), and Pennwell Corporation as Plan Administrator and Fiduciary ("Pennwell"), under the Employment Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. § 1001, _et seq._, for health care benefits. Plaintiff also seeks costs and attorneys' fees reasonably incurred prosecuting this action. Pending before the court is Defendants', Pennwell Corporation Medical and Vision Plan and Pennwell Corporation, Motion to Dismiss ("Defendants' Motion to Dismiss") (Docket Entry No. 8). For the reasons stated below the pending motion will be granted and this action will be dismissed without prejudice.

## I. Factual and Procedural Background

Plaintiff initiated this action against defendants by filing Plaintiff's Original Complaint (Docket Entry No. 1) on August 2, 2017. Plaintiff alleges the following facts:

4. The insurance plan issued and administered by Defendants covered the patient, P.C. (hereinafter the "Patient" or "P.C.") as an insured under the plan.

5. The Patient initially presented to the hospital on August 30, 2015 through September 2, 2015. Upon presentation, Plaintiff verified effective coverage for the Patient. The Patient was initially cared for a brain mass and a final diagnosis of cerebral embolism, cerebral edema.

6. Patient was re-admitted to the hospital on September 8, 2015 through September 14, 2015. The diagnosis was the same: cerebral embolism, cerebral edema.

7. Patient was again re-admitted to the hospital from September 19, 2015 through September 23, 2015 complaining of chest pains. The diagnosis was subendo infarction and parox ventricular tachycardia.

8. Further, the patient had some speech pathology therapy at the hospital from October 10, 2015 through October 22, 2015.

9. Plaintiff rendered medically necessary services to P.C. and submitted their industry standard UB-04 claim statements to Defendants' agent for payment for the services and supplies authorized by Defendant and provided to the Defendant's insured. Thereafter, Defendants' agent and administrator issued explanation of benefits[:] 1.) for dates of service between August 30, 2015 to September 14, 2015 (Exhibit "B") on January 13, 2016, stating that the claim was not covered per plan exclusions, and to refer to the plan document, and 2.) for dates of service on August 30, 2015 and on September 8, 2015 (Exhibit "C") on January 8, 2016 stating that the claim was not covered per plan exclusions, and to refer to the plan document. 3.) for dates of service on September 19, 2015 through September 23, 2015 (Exhibit "D") on January 13, 2016 stating that

the claim was not covered per plan exclusions, and to refer to the plan document. 4.) for dates of service on October 10, 201[5] through October 22, 2015 (Exhibit "E") on February 5, 2016 stating that the claim was not covered per plan exclusions, and to refer to the plan document.

10. Plaintiff requested an appeal of Defendants' denial/nonpayment on January 19, 2016. This appeal also requested plan documents. Defendant responded with a letter classifying the January 19, 2016 correspondence as an appeal, and denied the claim due to plan exclusions. The response did not contain all of the plan documents requested. Plaintiff again requested the plan documents from Defendant on March 21, 2016 only for Defendant to respond with a letter dated April 21, 2016 reversing its previous position that the Plaintiff had filed an appeal and refusing to provide requested documents.

11. Plaintiff would show that said Defendant's Plan was in full force and effect and covers the hospitalization of P.C. for the admissions under the Plan (Exhibit "A"). This patient was admitted to the Hospital through the emergency room upon representations that such coverage was in full force and effect and would cover these hospitalizations.[1]

Based on these factual allegations, plaintiff asserts a single statutory cause of action for recovery of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), as assignee of P.C. In pertinent part plaintiff asserts:

16. Defendants allege that an employee welfare benefit plan, as that term is defined in 29 U.S.C. § 1002(1), has been established and/or maintained by Defendants, and that the provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq., (hereinafter "ERISA"), control the claim for benefits made by Plaintiff, as assignee of P.C., plan participant or beneficiary of the alleged ERISA welfare benefit plan. P.C. executed an irrevocable assignment of insurance

---

[1]Plaintiff's Original Complaint, Docket Entry No. 1, pp. 2-4 ¶¶ 4-11 (citing Exhibits A-K and R-W attached thereto).

-3-

benefits on September 14, 2015 in favor of Plaintiff which provides in pertinent parts:

> "In consideration of services rendered, I hereby irrevocably assign and transfer to the hospital for myself and my dependents, all rights, title and interest in the benefits payable for services rendered by the hospital provided in any insurance policy(ies) under which I or any of my dependents are insured. Said irrevocable assignment and transfer shall be for the purpose of granting the hospital an independent right of recovery. . ."

17. The Defendant, PENNWELL CORPORATION[,] is the plan "administrator" and/or "sponsor." Accordingly, Plaintiff brings this cause of action pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to them through the assignment granted by the patient pursuant to the terms of the employee welfare benefit plan, administered by said Defendant for the care and treatment it provided to P.C.

18. Plaintiff, upon information supplied by Defendants, through its authorized agents or representatives, believed or had reason to believe, that the care and treatment of P.C. was payable as covered charges under the terms and conditions of the applicable plan issued by Defendant, PENNWELL CORPORATION, as part of the ERISA type benefits offered to employee members and their dependents.

19. Defendants have denied payment on the claims submitted by Plaintiff without justifiable cause or excuse. . .

20. The irrevocable assignment of the right to payment under the health benefit plan was executed by the patient in favor of Plaintiff, which was intended to assign any and all rights to payment of said benefits and causes of action for failure to pay to Plaintiff, in consideration of the services rendered to the patient. The assignment was meant and intended to apply to any and all health benefits that P.C. was entitled to for payment of the Plaintiff's charges. Plaintiff is an assignee of an intended "participant" or "beneficiary" of the health benefit plan within the meaning of 29 U.S.C. §§ 1002(8),

-4-

1132(a), and steps into the shoes of said Participant, giving Plaintiff standing to assert this cause of action.

21. Plaintiff, as an assignee of an intended participant within the meaning of 29 U.S.C. § 1132(a), is entitled to file this cause of action against the Plan and/or its Administrator, and the policy which is liable for payment of major medical benefits due for this patient's admission. It is clear that the plan of insurance was meant and intended to pay for major medical in-patient services and treatment, and the patient participated in this group insurance plan or program with the intent to provide protection from payment of hospital bills.[2]

## II. **Defendants' Motion to Dismiss**

The only claim asserted in Plaintiff's Original Complaint is an ERISA claim for Plan benefits as an assignee of P.C.[3] Defendants move to dismiss Plaintiff's Original Complaint arguing:

1. Plaintiff's Original Complaint is subject to the assignment provisions in the applicable ERISA Plan and should be dismissed pursuant to ERISA.

2. Plaintiff's Original Complaint should be dismissed as a matter of law as Plaintiff lacks standing to assert the ERISA claim.[4]

Citing Federal Rule of Civil Procedure 12(b)(1) and ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), defendants argue that

---

[2]Id. at 5-7 ¶¶ 16-22 (quoting Authorization for Use/Disclosure and Waivers/Insurance Assignments, Exhibit P, Docket Entry No. 1-1, p. 147 or 169).

[3]Id. See also Plaintiff's Response to Defendants' Motion to Dismiss ("Plaintiff's Response"), Docket Entry No. 12, p. 3 ¶ 6 ("Plaintiff's claim is one for unpaid medical benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Plaintiff asserts this claim in its individual capacity and derivatively as the 'assignee' of the plan member, P.C.").

[4]Defendants' Motion to Dismiss, Docket Entry No. 8, p. 1.

Plaintiff's Original Complaint should be dismissed with prejudice because "the terms of the ERISA plan prohibit assignment of claims by the beneficiary to the Plaintiff."[5]

Plaintiff responds that defendants' motion to dismiss should be denied because it possesses standing either (1) derivatively as an assignee of a Plan participant or beneficiary, i.e., P.C., or (2) independently as a designated or intended representative of a Plan participant or beneficiary under 29 C.F.R. § 2560.503-1(b)(4). Asserting that defendants' motion "is more akin to a premature motion for summary judgment without the benefit of any discovery. . .,"[6] plaintiff asks the court to deny defendants' motion, and

> [s]hould the Court determine that any aspect of Plaintiff's jurisdiction allegations are deficient, Plaintiff requests that the Court defer ruling on [the motion] to allow the Plaintiff to engage in limited discovery to obtain copies of verified plans, summary plan descriptions and other relevant documents to identify all plan provisions and correspondence relevant

---

[5]Brief in Support of Defendants', Pennwell Corporation Medical and Vision Plan and Pennwell Corporation, Motion to Dismiss ("Defendants' Brief"), Docket Entry No. 8-1, p. 2. Defendants also argue that the assignment at issue does not extend to the defendants' self-funded employee benefit plan because it only assigns P.C.'s rights to benefits provided by insurance policies under which P.C. was insured, while the self-funded plan at issue here is not an insurance policy. Id. at 9-10. Because the court concludes that the Plan's anti-assignment provision controls the outcome of this case, the court has assumed without deciding that the assignment extends to the Plan.

[6]Plaintiff's Response, Docket Entry No. 12, p. 2 ¶ 2.

to Plaintiff's claims to establish that the Court has subject matter jurisdiction to hear this case.[7]

Alternatively, plaintiff asks for "leave of Court to amend its pleading to correct any perceived deficiencies."[8]

Defendants reply that plaintiff lacks derivative standing because the Plan's anti-assignment provision is enforceable and unambiguous, and that plaintiff's argument regarding independent standing finds no support in either the law or the Plaintiff's Original Complaint.[9]

## A.    Standard of Review

Defendants' challenge to plaintiff's standing concerns the justiciability of the plaintiff's claim. See <u>Steel Co. v. Citizens for a Better Environment</u>, 118 S. Ct. 1003 (1998) (standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." <u>Warth v. Seldin</u>, 95 S. Ct. 2197, 2205 (1975). The standing inquiry has two components, involving "both constitutional

---

[7]<u>Id.</u>

[8]<u>Id.</u>

[9]Defendants' Reply in Support of Their Motion to Dismiss ("Defendants' Reply"), Docket Entry No. 16.

limitations on federal-court jurisdiction and prudential limitations on its exercise." Id.

Constitutional standing stems from the case or controversy requirement of Article III and is premised on concepts of injury, causation, and redressability. Id. (citing Baker v. Carr, 82 S. Ct. 691, 703 (1962)). See also Duarte ex rel. Duarte v. City of Lewisville, Texas, 759 F.3d 514, 517 (5th Cir. 2014) (recognizing that a party satisfies the constitutional element of standing by "present[ing] (1) an actual or imminent injury that is concrete and particularized, (2) fairly traceable to the defendant's conduct, and (3) redressable by a judgment in [his or her] favor."). Prudential standing concerns whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked, whether the complaint raises abstract questions more properly addressed by the legislative branch, or whether plaintiff is asserting his or her own legal rights and interests rather than the interests of third parties. Warth, 95 S. Ct. at 2206 ("[T]he standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.").[10]

_____

[10]The Supreme Court has recently observed that the inquiry of whether a party has a cause of action under a statute has "on occasion [been] referred to as 'statutory standing.'" Lexmark International, Inc. v. Static Control Components, Inc., 134 S. Ct.
(continued...)

Defendants' argument that plaintiff lacks standing to assert a claim for benefits under ERISA challenges plaintiff's prudential standing because it challenges plaintiff's ability to assert a claim under a particular statute, i.e., ERISA. Although defendants seek dismissal for lack of subject matter jurisdiction under Rule 12(b)(1), prudential standing is typically treated as a merits question properly addressed by a motion filed under Rule 12(b)(6) for failure to state a claim to which relief may be granted. See Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 & n.2 (5th Cir. 2011) ("Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)."). The Fifth Circuit has, however, treated this type of standing as a jurisdictional limitation on ERISA claims. See LeTourneau Lifelike Orthothics & Prosthetics, Inc. v. Wal-Mart Stores, Inc., 298 F.3d 348, 351 (5th Cir. 351 (5th Cir. 2002) ("[ERISA s]tanding is jurisdictional."). In Cobb v. Central States Southwest and Southeast Areas Pension Fund, 461 F.3d 632, 635 (5th Cir. 2006), cert. denied, 127 S. Ct. 1153 (2007), the Fifth Circuit explained that "the issue of whether a particular

---

[10](...continued)
1377, 1387 & n.4 (2014). While the Court noted that the term "statutory standing" is "an improvement over . . . 'prudential standing,' since it correctly places the focus on the statute," id., the Court added that term can also be "misleading since the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction." Id.

-9-

plaintiff falls within one of the three enumerated classes of litigants (participants, beneficiaries or fiduciaries) is a jurisdictional one," and recognized that "[t]his court has 'hewed to a *literal construction* of § 1132(a)' on this issue." Id. (quoting Hermann Hospital v. MEBA Medical & Benefits Plan ("Hermann I"), 845 F.2d 1286, 1289 (5th Cir. 1988), overruled in part on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co., 698 F.3d 229 (5th Cir. 2012) (en banc) (per curiam), cert. denied, 133 S. Ct. 1467 (2013)). The court may therefore properly consider defendants' challenge to plaintiff's standing under Rule 12(b)(1). See LeTourneau, 298 F.3d at 353 ("Because LeTourneau had neither direct nor derivative standing to bring suit, the district court lacked jurisdiction to hear it.").

Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. Id. A factual attack challenges the existence of subject matter jurisdiction irrespective of the pleadings, and matters outside the pleadings such as testimony and affidavits may be considered. Id. Defendants argue that their challenge to the plaintiff's standing is a facial attack because their motion cites to and relies upon only the complaint and the documents attached

thereto.[11] Because copies of the assignment and the Plan upon which defendants based their Rule 12(b)(1) challenge are attached to Plaintiff's Original Complaint, the court agrees that the defendants' motion to dismiss raises a facial — not a factual — attack on the plaintiff's pleadings. See In re Parkway Sales & Leasing, Inc., 411 B.R. 337, 343 (Bankr. E.D. Tex. 2009)("In a facial attack, the defendant's motion to dismiss is based on the face of the complaint and the documents attached to the complaint."); Seastrunk v. Darwell Integrated Technology, Inc., No. 3:05-CV-0531-G, 2006 WL 1932342, * 2 (N.D. Tex. July 10, 2006) (analyzing complaint and scope of attached copyright assignment in ruling on the defendant's facial attack to the court's jurisdiction). When considering a Rule 12(b)(1) facial attack, courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the non-moving party. Lewis v. Knutson, 699 F.2d 230, 237 (5th Cir. 1983). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom. Cloud v. United States, 122 S.Ct. 2665 (2002). Dismissal on jurisdictional grounds is not on the merits. Id.

---

[11]See Defendants' Reply, Docket Entry No. 16, p. 2 ("PennWell . . . views its Motion to Dismiss as 'facial,' and asserts that Plaintiff has failed to meet its burden that the jurisdictional requirements have been met.").

## B. Analysis

### 1. Applicable Law

Under 29 U.S.C. § 1132(a)(1)(B), a civil enforcement action may be brought only by a plan participant, beneficiary, fiduciary, or the Secretary of Labor. Healthcare providers do not have standing to sue in their own right to collect benefits under an ERISA plan, but they may obtain assignments from their patients and thereby have derivative standing to bring ERISA actions to recover benefits. See North Cypress Medical Center Operating Co., Ltd. v. Cigna Healthcare, 781 F.3d 182, 191 & n. 31 (5th Cir. 2015) (quoting Harris Methodist Fort Worth v. Sales Support Services, Inc. Employee Health Care Plan, 426 F.3d 333-34 (5th Cir. 2005) ("It is well established that a healthcare provider, though not a statutorily designated ERISA beneficiary, may obtain standing to sue derivatively to enforce an ERISA plan beneficiary's claim.")). See also Dallas County Hospital District v. Associates' Health & Welfare Plan, 293 F.3d 282, 289 (5th Cir. 2002) (holding that a hospital could not have independent standing to assert an ERISA claim without a valid, enforceable assignment from an ERISA plan participant or beneficiary). Courts "interpret the assignment form in accordance with Texas contract law principles and the [Plan] under ERISA principles." Harris, 426 F.3d at 334.

-12-

2.  Application of the Law to the Alleged Facts

(a)  Plaintiff Has Not Alleged Derivative Standing

Defendants argue that plaintiff lacks derivative standing to bring a claim for Plan benefits because Plaintiff has failed to allege that it has a valid assignment of P.C.'s rights under the Plan.  Defendants argue that plaintiff's allegations fall short of alleging a valid assignment of P.C.'s rights because "the applicable anti-assignment provision contained in the Plan [attached to Plaintiff's Original Complaint] . . . states that the beneficiary has no right to assign his or her right to sue to recover benefits."[12]  The anti-assignment provision in the Plan attached to Plaintiff's Original Complaint states:

> No Participant shall at any time, either during the time in which he or she is a Participant in the Plan, or following his or her termination as a Participant, in any manner, have any right to assign his or her right to sue to recover benefits under the Plan, to enforce rights due under the Plan or to any other causes of action which he or she may have against the Plan or its fiduciaries.[13]

Plaintiff does not dispute that the Plan's anti-assignment provision bars participants from assigning their right to sue for Plan benefits.  Instead, plaintiff argues that (1) the anti-assignment provision is unenforceable against a healthcare

---

[12]Defendants' Brief, Docket Entry No. 8-1, pp. 1-2.

[13]See Exhibit A to Plaintiff's Original Complaint, Docket Entry No. 1-1,  p. 58 of 169.

-13-

provider,[14] (2) the anti-assignment provision in the Plan is ambiguous and therefore unenforceable,[15] and (3) defendants by their course of conduct have waived or are estopped from enforcing the Plan's anti-assignment provision.[16]

### (1) Anti-Assignment Provisions Are Enforceable

Citing _Tango Transport v. Healthcare Financial Services L.L.C._, 322 F.3d 888, 891-94 (5th Cir. 2003), plaintiff argues that "[t]o deny Plaintiff standing in this case is wholly inequitable and would send a chilling effect to other health care providers from accepting patients covered under self funded plans."[17] Plaintiff also cites _Hermann Hospital v. MEBA Medical & Benefits Plan ("Hermann II")_, 959 F.2d 569, 574 (5th Cir. 1992), _overruled in part on other grounds by_ Access Mediquip, 698 F.3d at 229, for its holdings that an "[a]nti-[a]ssignment clause did not apply to medical service providers,"[18] and that "the anti-assignment clause applied only to unrelated third party assignees such as a creditor who may attempt to obtain a voluntary assignment to cover a debt that had no relationship, or 'nexus', with the Plan or its

---

[14]Plaintiff's Response, Docket Entry No. 12, pp. 7-8 ¶¶ 13-16.

[15]_Id._ at 9-10 ¶¶ 17-18.

[16]_Id._ at 10-12 ¶¶ 19-23.

[17]_Id._ at 8 ¶ 13.

[18]_Id._ at ¶ 14.

benefits."[19] Neither the holding in <u>Tango</u> nor in <u>Hermann II</u> support plaintiff's argument that anti-assignment provisions are unenforceable against health care providers.

In <u>Tango</u> a participant in an ERISA plan executed a valid assignment of benefits to a provider for medical treatment received, and the provider assigned the participant's outstanding accounts to a health care collection agency, which sought reimbursement from the insurer. 322 F.3d at 889. At issue was whether valid assignments were limited to health care providers. The Fifth Circuit held the collection agency had derivative standing, as the medical provider assigned its right to payment to the collection agency. <u>Id.</u> The Fifth Circuit explained that

> denying derivative standing to health care providers would harm participants or beneficiaries because it would "discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them 'up-front.'" . . . Likewise, granting derivative standing to the assignees of health care providers helps plan participants and beneficiaries by encouraging providers to accept participants who are unable to pay up front. Conversely, to bar health care providers from assigning their rights under ERISA, and shifting the risk of non-payment to a third-party, would chill health care providers' willingness to accept a patient. Third parties like [collection agencies] will only be willing to purchase an assignment from a health care provider if they can be assured that they will be afforded standing to sue for reimbursement.

---

[19]<u>Id.</u>

Id. at 894.  Contrary to plaintiff's argument, Tango did not hold
that a medical provider could have derivative standing to sue an
ERISA plan without a valid assignment.

In Hermann II, 959 F.2d at 575, the Fifth Circuit held an
insurer estopped from enforcing an anti-assignment clause "because
of its protracted failure to assert the clause when [the purported
assignee] requested payment pursuant to a clear and unambiguous
assignment of payments for covered benefits."  Alternatively, the
Fifth Circuit analogized the anti-assignment clause at issue in
that case to clauses commonly found in spendthrift trusts and held
that even if the insurer was not estopped from enforcing the anti-
assignment clause,

> that clause still would not have destroyed [the
> patient's] assignment of benefits to [the hospital]. We
> interpret the anti-assignment clause as applying only to
> unrelated, third-party assignees — other than the health
> care provider of assigned benefits — such as creditors
> who might attempt to obtain voluntary assignments to
> cover debts having no nexus with the Plan or its
> benefits, or even involuntary alienations such as
> attempting to garnish payments for plan benefits.

Id.

Plaintiff's reliance on Hermann II's alternative holding is
misplaced because there is no similarity between the language of
the clause at issue in Hermann II and the language of the anti-
assignment provision at issue here.  The anti-assignment provision
in Hermann II stated:

> No employee, dependent or beneficiary shall have the
> right to assign, alienate, transfer, sell, hypothecate,
> mortgage, encumber, pledge, commute, or anticipate any
> benefit payment hereunder, and any such payment shall not
> be subject to any legal process to levy execution upon or
> attachment or garnishment proceedings against for the
> payment of any claims.

959 F.2d at 574 (quoted in LeTourneau, 298 F.3d at 351). The anti-assignment provision at issue here states that "[n]o Participant shall at any time . . . in any manner, have any right to assign his or her right to sue to recover benefits under the Plan. . ."[20] This anti-assignment provision does not in any way resemble either the third-party creditor anti-assignment clause at issue in Hermann II or a typical spendthrift trust provision. Moreover, reasoning that Congress intended employers and employees to retain contractual freedom over ERISA-governed employee-benefit plans, the Fifth Circuit subsequently recognized that anti-assignment provisions are generally effective and will operate to render a purported assignment invalid. See LeTourneau, 298 F.3d at 352 ("Neither Hermann I nor Hermann II stands for the proposition that all anti-assignment clauses are per se invalid vis-à-vis providers of health care services."). See also Louisiana Health Services & Indemnity Co. v. Rapides Healthcare System, 461 F.3d 529, 537 (5th Cir. 2006), cert. denied, 127 S. Ct. 1831 (2007) ("We have held that an assignee has derivative standing to enforce claims under ERISA

---

[20]Exhibit A to Plaintiff's Original Complaint, Docket Entry No. 1-1, p. 58 of 169.

§ 502, thus permitting assignments when not precluded by the plan terms. We have also held that, absent a statute to the contrary, an anti-assignment provision in a plan is permissible under ERISA."). Plaintiff's argument that the anti-assignment provision included in the Plan is unenforceable against a health care provider therefore has no merit.

### (2) The Anti-Assignment Provision is Not Ambiguous

Asserting that the "anti-assignment clause in Defendants' Plan specifically allows for assignment of benefits for *medical expenses* to a medical provider . . . [but that] the prohibition against any right to sue the Plan for benefits is not clearly directed against medical providers,"[21] plaintiff argues that the anti-assignment clause in the Plan is — at best — ambiguous and unenforceable as to plaintiff's standing to sue for benefits.[22] The Plan's assignment provision states:

> Benefits for medical expenses covered under this Plan may be assigned by a Participant to the Provider as consideration in full for services rendered; . . . Payment of benefits which have been assigned will be made directly to the assignee unless a written request not to honor the assignment, signed by the covered Employee and the assignee, has been received before the proof of loss is submitted. No Participant shall at any time, . . . in any manner, have any right to assign his or her right to sue to recover benefits under the Plan, to enforce rights

---

[21]Plaintiff's Response, Docket Entry No. 12, p. 9 ¶ 18.

[22]Id. at 10 § 18.

due under the Plan or to any other causes of action which he or she may have against the Plan or its fiduciaries.[23]

This language expressly allows assignment of benefits for medical expenses covered under the Plan to providers, but bars assignment of the right to sue to recover benefits under the Plan or to enforce rights due under the Plan. This language is not ambiguous. To the contrary, the anti-assignment provision is unambiguously directed at providers to whom participants assign benefits for medical expenses covered under the Plan. Accordingly, the court is not persuaded that the anti-assignment provision is either ambiguous or unenforceable due to ambiguity.

> **(3) Plaintiff Has Not Alleged Facts Capable of Showing that Defendants Waived or are Estopped from Enforcing the Anti-Assignment Provision**

Relying on Hermann II, 959 F.2d at 574, plaintiff argues that

> Defendants were provided with notice of the assignment from P.C. to Plaintiff, they processed six claims for benefits to Memorial Hermann (not P.C.), and improperly denied all six claims without adequate explanation or specific reference to Plan provisions. (See Exhibits B-E, Plaintiff's Original Complaint). Defendants also processed and denied the six appeals brought on behalf of Plaintiff and never raised the "anti-assignment" defense that Defendants raise now. Defendants' Administrator never once raised or mentioned that Plaintiff did not have standing to pursue the appeal or provide notice of any anti-assignment clause in the Plan or the Plan documents, prior to Plaintiff's appeals of Defendants' denial of six claims.

---

[23]Exhibit A to Plaintiff's Original Complaint, Docket Entry No. 1-1, p. 58 of 169.

-19-

By accepting notice of the assignment and processing the claims for payment made by Memorial Hermann, denying all claims and denying the appeals from Memorial Hermann, and by failing to provide notice of any anti-assignment clause or plan documents, Defendants have either waived and/or are estopped from claiming any potential enforcement of the anti-assignment clause at issue. Plaintiff relied on Defendants['] actions in processing its claims and appeals through its Administrator. If the Court allows Defendants the benefit of the alleged anti-assignment clause, the only party which will be harmed is the estate of P.C., which will be obligated to pay for the medical services out of estate proceeds. Because Defendants have waived or are estopped from enforcing the anti-assignment clause at issue, Defendants' Motion to Dismiss should be denied. (See *Hermann II*, at 574, finding Defendant was estopped from enforcing the anti-assignment clause in the plan, based upon the course of dealing between the plan and the health care provider.)[24]

In <u>Hermann II</u>, 959 F.2d 569, the Fifth Circuit held that a plan was estopped from raising an anti-assignment provision in its plan agreement. The plaintiff, a hospital to whom a patient had assigned her rights under ERISA, had called the plan when the patient was first admitted and had been told by plan representatives that the patient was covered. <u>Id.</u> at 574. For six months while the patient was in the hospital the hospital repeatedly attempted to obtain payment for the services it was providing, but the plan continuously postponed payment, asserting only that it was "investigating" the claim. <u>Id.</u> The plan raised the anti-assignment clause for the first time over three years after the hospital first requested payment. <u>Id.</u> The hospital

---

[24]Plaintiff's Response, Docket Entry No. 12, pp. 10-11 ¶¶ 20-21.

argued, and the Fifth Circuit agreed, that the plan was estopped from relying on the anti-assignment provision because "[t]he anti-assignment clause was contained in the documentation establishing the Plan," but the hospital, "which was not privy to the Plan, had no opportunity to review that documentation." Id. The court imposed an affirmative duty on the plan to "notify [the hospital] of th[e anti-assignment] clause if it intended to rely on it to avoid any attempted assignments," id., and concluded that the plan was estopped from raising the anti-assignment provision in light of its "protracted failure to assert the clause when [the hospital] requested payment pursuant to a clear and unambiguous assignment of payments for covered benefits." Id. at 575.

Plaintiff's reliance on Hermann II is not persuasive because the complaint contains no facts about the parties' course of conduct, which if true, would allow the court to conclude that defendant has in fact waived or is estopped from relying on the Plan's anti-assignment provision. Plaintiff alleges that

16.   . . . P.C. executed an irrevocable assignment of insurance benefits on September 14, 2015 in favor of [p]laintiff which provides in pertinent parts:

"In consideration of services rendered, I hereby irrevocably assign and transfer to the hospital for myself and my dependents, all rights, title and interest in the benefits payable for services rendered by the hospital provided in any insurance policy(ies) under which I or any of my dependents are insured. Said irrevocable assignment and

transfer shall be for the purpose of granting the
hospital an independent right of recovery . . . ."[25]

But as to the parties' course of conduct plaintiff merely alleges:

> 9. Plaintiff rendered medically necessary services to
> P.C. and submitted their industry standard UB-04 claim
> statements to Defendants' agent for payment for the
> services and supplies authorized by Defendant and
> provided to the Defendant's insured. Thereafter,
> Defendants' agent and administrator issued explanation of
> benefits . . . stating that the claim[s were] not covered
> per plan exclusions, and to refer to the plan document.

> 10. Plaintiff requested an appeal of Defendants'
> denial/nonpayment on January 19, 2016. This appeal also
> requested plan documents. Defendant responded with a
> letter classifying the January 19, 2016 correspondence as
> an appeal, and denied the claim due to plan exclusions.
> The response did not contain all of the plan documents
> requested. Plaintiff again requested the plan documents
> from defendant on March 21, 2016 only for Defendant to
> respond with a letter dated April 21, 2016 reversing its
> previous position that the Plaintiff had filed an appeal
> and refusing to provide requested documents.[26]

Plaintiff also alleges that "[u]pon presentation, [p]laintiff
verified effective coverage for the [p]atient,"[27] and that P.C. "was
admitted to the Hospital through the emergency room upon
representations that such coverage was in full force and effect and
would cover these hospitalizations."[28]

---

[25]Plaintiff's Original Complaint, Docket Entry No. 1, p. 5
¶ 16.

[26]Id. at 3 ¶¶ 9-10.

[27]Id. at 2 ¶ 5.

[28]Id. at 4 ¶ 11.

The facts alleged by plaintiff are not analogous to those at issue in Hermann II that led the Fifth Circuit to hold the defendant estopped from relying on that plan's anti-assignment provision. Plaintiff has not alleged that the Plan continuously postponed payment asserting only that it was investigating the claim, that defendants waited until suit was filed to raise the anti-assignment provision for the first time, or that the anti-assignment clause was contained in documentation that plaintiff had no opportunity to review before filing suit. Plaintiff's allegations (supported by copies of the parties' correspondence attached to the Plaintiff's Original Complaint) show that the plaintiff's claim for benefits was denied as barred by Plan exclusions. Moreover, because plaintiff attached the Plan with the anti-assignment provision to its original complaint, plaintiff undisputedly had the Plan and the Plan's anti-assignment provision for review before filing suit. Therefore the facts alleged here are not capable of establishing a course of conduct analogous to the course of conduct evidenced in Hermann II that the Fifth Circuit characterized as "protracted failure to assert the clause," and held estopped the defendants from enforcing the anti-assignment clause at issue there.

Fifth Circuit caselaw distinguishes estoppel from waiver, and defines waiver as "a voluntary or intentional relinquishment of a known right." High v. E-Systems Inc., 459 F.3d 573, 581 (5th Cir.

2006) (citing <u>Pitts v. American Security Life Insurance Co.</u>, 931 F.2d 351, 357 (5th Cir. 1991)). Although plaintiff argues that "[d]efendants did not provide notice of the anti-assignment clause until well over seven months after the claims were incurred,"[29] Plaintiff's Original Complaint contains no allegations capable of showing when the defendants received notice of the assignment or how the defendants intentionally relinquished rights under the anti-assignment provision. Instead, plaintiff's allegations show that unlike the plaintiff in <u>Hermann II</u> who failed to receive notice of the anti-assignment clause until after suit was filed, the plaintiff in this action received the anti-assignment provision during the administrative claims process before filing suit. Plaintiff has not cited the court to any authority finding waiver under similar circumstances.

### (4) Conclusions as to Derivative Standing

Because the Plan attached to and made part of Plaintiff's Original Complaint contains an anti-assignment provision, and because the allegations of fact contained in Plaintiff's Original Complaint are not sufficient to establish that the anti-assignment provision is unenforceable or that defendants by their course of conduct have waived or are estopped from relying on the Plan's anti-assignment provision, plaintiff has failed to carry its burden

---

[29]<u>Id.</u> at 12 ¶ 23.

to allege facts sufficient to show that the plaintiff acquired a valid assignment needed to establish derivative standing to assert a claim for ERISA Plan benefits.  Plaintiff's Original Complaint is therefore subject to dismissal for lack of subject matter jurisdiction.  See LeTourneau, 298 F.3d at 352 (rejecting the contention that all anti-assignment clauses are per se invalid vis-à-vis providers of health care services, and recognizing that validity of an assignment depends on construction of the plan at issue); Rapides Healthcare System, 461 F.3d at 537 ("We have held that an assignee has derivative standing to enforce claims under ERISA § 502, thus permitting assignments when not precluded by the plan terms.).

(b)  Plaintiff Has Not Alleged Independent Standing

Citing 29 C.F.R. § 2560.503-1(b)(4), plaintiff argues that it has "independent standing to pursue its claims against [d]efendants as a statutor[il]y recognized and authorized representative of the deceased patient, P.C."[30]  Section 2560.503-1(b)(4) states that claims procedures for an ERISA plan will be deemed reasonable only if they "do not preclude an authorized representative for a claimant from acting on behalf of such a claimant in pursuing a benefit claim or appeal of an adverse benefit determination."  The "claims procedures" discussed by this section of the C.F.R. are,

_____

[30]Plaintiff's Response, Docket Entry No. 12, p. 12 ¶ 24.

however, not related to causes of action asserted in federal court but are, instead, related solely to administrative claims: "the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations." 29 C.F.R. § 2560.503-1(b). Although this provision allows a representative to act on the claimant's behalf when dealing with plan administrators, plaintiff has not cited any authority in support of its argument that it provides a representative standing to file suit against a plan or its administrators in federal court. In considering similar arguments courts have held that 29 C.F.R. § 2650.503-1(b)(4) applies to submission of administrative claims and appeals on behalf of beneficiaries, but does not apply to claims asserted in civil actions filed in federal courts. See e.g., Menkowitz v. Blue Cross Blue Shield of Illinois, Civil Action No. 14-2946, 2014 WL 5392063, * 3 (D.N.J. October 23, 2014); AllianceMed LLC v. Aetna Life Insurance Co., No. CV-16-02435-PHX-JAT, 2017 WL 394524, at *3 & n. 3 (D. Ariz. Jan. 30, 2017). Moreover, plaintiff's complaint has not cited 29 C.F.R. § 2650.503-1(b)(4) as a basis for the claim to Plan benefits asserted in this action. Accordingly, the court is not persuaded that 29 C.F.R. § 2560.503-1(b)(4) provides plaintiff independent standing to sue defendants for ERISA Plan benefits in federal court as P.C.'s authorized representative.

## III. **Plaintiff's Requests for Leave to Amend**

Plaintiff requested leave to amend at both the beginning and the end of its response to defendants' motion to dismiss. At the beginning of the response, plaintiff wrote:

> Should the Court determine that any aspect of Plaintiff's jurisdiction allegations are deficient, Plaintiff requests that the Court defer ruling on the Federal Rule[] of Civil Procedure 12(b)(1) Motion to Dismiss to allow the Plaintiff to engage in limited discovery to obtain copies of verified plans, summary plan descriptions and other relevant documents to identify all plan provisions and correspondence relevant to Plaintiff's claims to establish that the Court has subject matter jurisdiction to hear this case. . . In the alternative, Plaintiff requests the Court grant it leave of Court to amend its pleading to correct any perceived deficiencies. Leave to amend should be freely given when justice so requires.[31]

At the end of its response, plaintiff writes:

> As Plaintiff has independent standing to pursue claims without an assignment, Defendants' Motion should in all respects be denied. Alternatively, if necessary, Plaintiff requests leave of Court to file an amended Complaint to allege facts sufficient to maintain subject matter jurisdiction in accordance with this Court's ruling.[32]

Having reviewed the plaintiff's complaint, the defendants' motion to dismiss, and the plaintiff's response to the defendants' motion to dismiss, the court has concluded that plaintiff has neither alleged nor argued facts capable of establishing derivative or independent standing to prosecute its claim for ERISA Plan benefits. See § II, above.

---

[31] Id. at 2 ¶ 2.

[32] Id. at 14 ¶ 26.

"Rule 15(a) requires a trial court 'to grant leave to amend "freely," and . . . evinces a bias in favor of granting leave to amend.'" Jones v. Robinson Property Group, L.P., 427 F.3d 987, 994 (5th Cir. 2005) (quoting Lyn-Lea Travel Corp. v. American Airlines, 283 F.3d 282, 286 (5th Cir.), cert. denied, 123 S. Ct. 659 (2002)). A court must possess a substantial reason to deny a request for leave to amend, but leave to amend is not automatic and is, instead, left to the court's discretion. Id. (citing Halbert v. City of Sherman, Texas, 33 F.3d 526, 529 (5th Cir. 1994)). In Wiggins v. Louisiana State University-Health Care Services Division, ____ Fed. App'x ____, 2017 WL 4479425, * 2 (5th Cir. October 6, 2017), the Fifth Circuit stated that

> [g]ranting leave to amend . . . is not required if the plaintiff has already pleaded [its] "best case." . . A plaintiff has pleaded her best case after she is "apprised of the insufficiency" of her complaint. . . A plaintiff may indicate she has not pleaded her best case by stating material facts that she would include in an amended complaint to overcome the deficiencies identified by the court.

Moreover, a "court need not grant a futile motion to amend." Legate v. Livingston, 822 F.3d 207, 211 (5th Cir.), cert. denied, 137 S. Ct. 489 (2016) and 137 S. Ct. 1139 (2017) (citing Stripling v. Jordan Production Co., 234 F.3d 863, 872-73 (5th Cir. 2000)). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." Id.

Although plaintiff has not previously amended its complaint, it could have done so without leave of court within 21 days after serving its complaint or after service of defendants' Rule 12(b)(1) motion. Fed. R. Civ. P. 15(a)(1)(A)-(B). Instead of amending its complaint as a matter of right to cure the deficiencies raised by defendants' motion to dismiss, plaintiff filed a response to the defendants' motion arguing that its complaint sufficiently alleged facts capable of establishing both derivative and independent standing to prosecute the only claim asserted in its complaint: a claim for ERISA Plan benefits as P.C.'s assignee. Moreover, plaintiff has neither filed a formal motion to amend nor submitted a proposed amended complaint. Instead, plaintiff has urged the court to defer ruling on the motion to dismiss until discovery can be conducted, and has asked the court for leave to amend "if necessary."[33]

Plaintiff has asked the court to defer ruling on the motion to dismiss to allow plaintiff "to engage in limited discovery to obtain copies of verified plans, summary plan descriptions and other relevant documents to identify all plan provisions and correspondence relevant to [the p]laintiff's claims to establish that the Court has subject matter jurisdiction to hear this case."[34] Since, however, plaintiff attached to its original complaint copies

---

[33]_Id._

[34]_Id._ at 2 ¶ 2.

of the assignment, the Plan, and correspondence with defendants regarding the alleged claim for benefits, and since plaintiff has failed to describe what, if any, material facts it reasonably expects limited discovery to reveal, the court has no reason to concluded that limited discovery is likely to produce facts capable of establishing plaintiff's standing to pursue an ERISA claim for Plan benefits. Moreover, because plaintiff failed to respond to defendants' motion to dismiss with facts that would be capable of establishing plaintiff's standing to assert an ERISA claim for Plan benefits, the court concludes that amendment would be futile.

## V.  Conclusions and Order

For the reasons stated in § II, above, the court concludes that Plaintiff's Original Complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(1) for failure to allege facts capable of establishing either derivative or independent standing to prosecute a claim for ERISA Plan benefits.

For the reasons stated in § III, above, the court concludes that plaintiff has pleaded its best case and that amendment would be futile. Accordingly, Defendants', Pennwell Corporation Medical and Vision Plan and Pennwell Corporation, Motion to Dismiss (Docket Entry No. 8) is **GRANTED.**

**SIGNED** at Houston, Texas, on this the 22nd day of December, 2017.

SIM LAKE
UNITED STATES DISTRICT JUDGE